## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHRISTINA RENEA NELSON and** | * | **CIVIL ACTION NO.** |
| **VICTOR DAVID NELSON** | * | |
|       **Plaintiffs** | * | |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | |
| **TOWN OF NEW LLANO** | * | **MAGISTRATE** |
|       **Defendant** | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | | |

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

The Complaint for Declaratory Relief, Injunctive Relief, and Damages of Christina Renea Nelson and her husband, Victor David Nelson, residents and domiciliaries of the Parish of Vernon, State of Louisiana, respectfully represents as follows:

### I.     JURISDICTION AND VENUE

1.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, 2201, and 2202.

2.

Venue is proper in the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b) as the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

3.

Further, venue is proper in this Court pursuant to 28 U.S.C. § 98(c) as Defendant, the Town of New Llano (hereinafter "the Town"), is situated in this judicial district.

4.

Plaintiff Christina Nelson has resided in the Town of New Llano, Parish of Vernon, State of Louisiana, since late August 2013.

5.

Plaintiff Victor Nelson has resided in the Town of New Llano, Parish of Vernon, State of Louisiana, since late August 2013.

6.

Defendant, the Town of New Llano, was at all times material hereto a municipality created under the Lawrason Act, La. R.S. 33:321, *et seq.*, and the municipality was at all times the governing body of the Town of New Llano for purposes of liability under 42 U.S.C. § 1983.

7.

The Town of New Llano operated the police, fire, code enforcement, and water departments, the employees of which were within the course and scope of their employment with the Town of New Llano for purposes of state law and under color of state law for purposes of federal law at all times material hereto. The Town and its employees were at all times material hereto enforcing the official policy as represented in Ordinance 4 of 2013, the ordinance at issue herein, and the common custom was one of *ultra vires* enforcement by personnel other than animal control officers as required under the Ordinance.

8.

The Louisiana Attorney General will be served with a copy of this Complaint pursuant to Louisiana Code of Civil Procedure article 1880, and all conditions precedent to the maintenance of this action have been performed and/or waived.

9.

Plaintiffs' claim for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988 and grounds of equity.  No administrative claim filing or other pre-litigation requirements apply to the Nelsons' claims against the Town and its employees and agents under 42 U.S.C. § 1983 nor for the other relief sought against the Town.

10.

The Nelsons bring this action pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as other provisions of the federal constitution, the Constitution of the State of Louisiana, state and local statutory law, and civil law.

11.

This Court has personal jurisdiction over Defendant.

II.    GENERAL ALLEGATIONS

12.

Plaintiffs re-allege the allegations contained in paragraphs 1 – 11 and further allege as follows:

13.

Dogs have been classified as personal property in the State of Louisiana.  La. R.S. 3:2773.  Thus, the ownership of a dog presents a fundamental property and/or liberty interest

protected under the state and federal constitutions.  *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir.

1984).

14.

Mazzy is a mixed-breed dog that the Nelsons have owned, cared for, and loved since

2011.  Mazzy was rescued from a shelter in Indiana, and no breed pedigree was ever provided to

the Nelsons regarding Mazzy.  The dog was known to them as a mixed breed, and not a purebred

dog.  Further, they considered it a terrier mix.  At no time did they believe that Mazzy was an

"American Staffordshire Terrier."  At all times relevant herein, Mazzy was regarded by Plaintiffs

as both a sentient personality and as an immediate family member.  Mazzy is a companion

animal, has never bitten any person or animal, has no animal control history or complaints, is not

aggressive, and is not a "dangerous dog" as defined in La. R.S. 14:102.14 or a "vicious dog" as

defined in La. R.S. 14:102.15.

15.

Plaintiff Victor Nelson is a staff sergeant in the United States Army.  In June 2013, the

Nelsons found out that the United States Army was transferring them to Fort Polk in Vernon

Parish.

16.

They then began looking for a home within commuting distance of Fort Polk.  They

informed their real estate agent that they did not want to live in an area with a ban or restrictions

on any particular breed of dog.  Their agent gave them a listing of dog-friendly rental homes in

the towns of New Llano and Leesville and gave them keys to the homes, so the Nelsons drove

around to see them.  After deciding which house they wanted to rent, and to make sure there

would not be a problem with having dogs in the home, the Nelsons even showed their real estate

agent pictures of Mazzy.  The agent stated that there would be no problem having her live in the rental home.  Thus in late August 2013, Plaintiffs signed an agreement to lease the dog-friendly house.

17.

Shortly thereafter, Christina Nelson went to the water department to turn on the water to the rental home.  While there, she received a document entitled "Welcome to the Town of New Llano."[1]   At the bottom, there was handwritten language stating, "No pit bulls or pit bull breeds of any kind allowed!!!"[2]

18.

A water company worker, acting in the course and scope of her employment with the Town and under color of state law, asked Christina Nelson what kind of dogs she had.  She told the employee she had a terrier mix and Border Collie.

19.

Immediately after having this discussion with the water department employee, Christina Nelson returned to her real estate agent company and informed her agent that she had learned of the pit bull ban in the Town.  The agent told her since Mazzy was of mixed breed, there would be no problem with having her live in the Town.

20.

Thereafter, at the beginning of September 2013, the Nelsons moved into and had their belongings delivered to their home in New Llano.  While they had been looking for homes, they had had their two dogs boarded, but on or about September 5, 2013, the Nelsons brought their two dogs to live with them in the rental home.

---

[1] Exhibit A, notice from the water department.
[2] *Id.*

21.

On the morning of September 6, 2013, the Fire Chief/Marshall, Jim Ratcliff, came to the Nelsons' home while they were unavailable and, apparently on behalf of "Code Enforcement," left a notice on the door that he had come to "look at" their dogs.[3]

22.

 As a result of the notice, the Nelsons, who knew nothing of the local law which apparently banned pit bulls and who had not been provided by any official, employee, or agent of the Town a copy thereof, decided to board Mazzy at a veterinarian's office outside of New Llano in order to have the opportunity to read the language of the Ordinance and understand how to proceed.

23.

Subsequent to boarding Mazzy, Christina Nelson called the number on the Code Enforcement notice and asked the inspector to return.

24.

Later in the day on September 6, 2013, Jim Ratcliff returned in his New Llano Fire Department Uniform, along with another similarly-dressed male fire department officer.  Mr. Ratcliff was introduced to the Nelsons' Border Collie, and nothing was said about that dog.  The Nelsons also let Mr. Ratcliff know that they had a dog of mixed breed origin and that they did not know her genetic information because she had been rescued from a shelter.

25.

Mr. Ratcliff then provided the Nelsons with a copy of the Ordinance[4] prohibiting "pit bull dogs" from the Town.  However, the language of the Ordinance made it clear that there was no

---

[3] Exhibit B, doorknob Code Enforcement notice.
[4] Exhibit C, Ordinance 4 of 2013.

way for an owner to determine whether his or her dog was banned pursuant to the terms of the Ordinance because it had two definitions of pit bulls, one requiring a majority of traits of three named breeds (Staffordshire Bull Terrier, American Staffordshire Terrier, and American Pit Bull Terrier), and another in Section 10 of the Ordinance which stated that a dog would not be banned if it was "not of **any** Pit Bull breed."[5]  This scared Plaintiffs because "any" in its normal usage could be interpreted as one percent.  The Nelsons did not know and have never been told how this facially-conflicting two-tiered definition is interpreted, and thus they could have no knowledge based on the Ordinance whether their dog was banned.

26.

The Nelsons questioned how the Fire Department and/or "Code Enforcement" had the authority to enforce the ban as the Ordinance requires an "animal control officer" to perform the duties thereunder.  Mr. Ratcliff simply advised there was not an animal control officer in the Town.  Instead, it was a policy through custom and usage for the Town to enforce Ordinance 4 of 2013 on an *ultra vires* basis through the use of the Fire Marshall.

27.

Upon information and belief, Mr. Ratcliff made no identification of Mazzy as a "pit bull" as defined in the Ordinance.  Instead, after he left the Nelsons' home, he merely told the Town that Mazzy was no longer in the Town's jurisdiction.

28.

Still, though, trying to avoid legal action and at Mr. Ratcliff's suggestion, the Nelsons then met with New Llano Mayor Freddie Boswell on or about September 9, 2013.  He advised that if they would allow the Town to perform, at a cost of $200.00 paid in advance by Plaintiffs, a DNA test pursuant to the Ordinance and the results came back that Mazzy was a banned breed,

---

[5] *Id.* (emphasis added).

he would "grandfather" her in pursuant to the Ordinance.  In proposing this "deal," the Mayor was intentionally and fraudulently making a promise he knew to be untrue and which he never intended to keep, nor could he legally keep, in order to get the Nelsons to bring Mazzy into the jurisdiction of the Town so it could perform the DNA test.  By law, the Mayor did not have the authority to make "a deal" with Plaintiffs because Ordinance 4 of 2013 did not give him such power.[6]

29.

Moreover, as of the date of the filing of this Complaint, the test used herein, the Mars Wisdom Panel 2.0, costs $79.99 when purchased from the manufacturer.[7]  It can also be purchased for $64.04 on the website Amazon.com[8] or for $89.99 from PetSmart.[9]  However, the Town charges $200.00 for the test, thereby profiting by at least $100.00 for each DNA test it performs.[10]  The test does not require any special expertise and was performed herein by a salaried employee of the Town.  The cost of the test is thus a penalty which bears no relationship to the actual cost incurred by the Town in performing the test.  Requiring the pre-payment of $200.00 as a prerequisite to challenging the Ordinance violates due process and the right of access to the courts and results in the automatic banning of a dog whose owner cannot afford to pre-pay $200.00.

---

[6] *See* Exhibit C which requires that dogs be grandfathered in by **May 1, 2013.**
[7] http://www.wisdompanel.com/wisdom-panel-2-0/ accessed on April 14, 2014, at 10:52 a.m.
[8] http://www.amazon.com/Wisdom-Panel-2-0-Breed-Identification/dp/B00CAVM9SI/ref=sr_1_1?ie=UTF8&qid=1397434431&sr=8-1&keywords=mars+wisdom+panel accessed on April 13, 2014, at 7:15 p.m.
[9] http://www.petsmart.com/featured-shops/breed-specific/wisdom-panel-breed-identification-dog-dna-test-zid36-5195662/cat-36-catid-100168;pgid=6lBuUTMOJSdSRpbUhwXJX1pZ0000Mctjr2fK?_t=pfm%3Dsearch%26SearchTerm%3Ddna accessed on April 13, 2014, at 7:17 p.m.
[10] According to Exhibit G attached hereto, the Town purchased the test from the manufacturer.

30.

Nonetheless, on September 9, 2013, the Nelsons, being unaware of the Mayor's true intentions, relied on his false and intentionally fraudulent representations and paid $200.00 for a DNA test to be performed by the Town.[11]  Thereafter, on September 16, 2013, still relying on the Mayor's representations, the Nelsons took Mazzy for a cheek DNA swab.  The swab was taken in the parking lot of the Town Hall by Tamara Gibson, a Town Hall employee who stated to the Nelsons that she "hated all dogs" and who stated that they should not get their hopes up with regard to the Mayor's statement that he would have Mazzy grandfathered in if the test revealed she was a banned breed.  Up to that point, no one from the Town had even seen Mazzy to determine whether she fell into a class of dogs that should be DNA tested.

31.

Significantly, the Mars Wisdom Panel 2.0 test kit box contains a document that has instructions and Terms and Conditions which include the following condition:

> Many cities and communities have breed-specific ordinances and laws that may require special handling or prohibit ownership of some dogs with particular breed in their genetic background. Wisdom Panel 2.0 is **not intended to be used by regulatory or animal control officials to determine whether a particular breed is legislated or banned in a particular community.**[12]

The Town therefore was aware, or should have been aware, that the terms of use of the Mars Wisdom Panel 2.0 precluded use of the results therefrom to determine whether Mazzy was banned under Ordinance 4 of 2013.

32.

The Town, after taking the DNA of Mazzy, was the entity which submitted the test to Mars for processing.  The submission process began online when the Town, its employees, or

---

[11] Exhibit D attached hereto is a copy of Mrs. Nelson's receipt for the DNA test.
[12] Exhibit E, Terms and Conditions (emphasis added).

agents entered the "Kit Activation Number" on the Mars website, www.wisdompanel.com.[13] Then, in order to process the test, the Town, its employees, or agents had to click on a dialogue box to agree to the terms and conditions of the test.[14]  Thus, the Town or its employees agreed to the terms and conditions required by Mars or the test results would never have been generated. As noted above, one of the terms and conditions to which the Town agreed was that Mazzy's DNA test was not to be used "to determine whether a particular breed is legislated or banned in a particular community."[15]

33.

The Town thus entered into a contract with Mars that it would not use Mazzy's DNA test to ban her from the Town of New Llano; however, it breached its contract with Mars by using the DNA test in the very manner prohibited by Mars.  Plaintiffs are third-party beneficiaries to the Town's contract with Mars, and the Town's breach of the terms and conditions to which it agreed prohibits it from using the test results against Plaintiffs and Mazzy for purposes of banning Mazzy.

34.

Further, the Town fraudulently represented to Mars the purpose of the test.  When completing the dialogue box on the Mars website that asked for what "purpose" the test was being done, the Town fraudulently and intentionally selected "curiosity."[16]  The same drop-down menu offers the alternative purpose of "Local Ordinance Requirement."  This was the Town's actual purpose in performing the test, but it failed to choose that option.  This is further evidence that it knew of the terms and conditions precluding use of the test for breed discriminatory laws,

---

[13] Exhibit F, instructions for taking and submitting the DNA for testing.
[14] *Id.  See also* Exhibit E.
[15] Exhibit E.
[16] Exhibit G, Test Kit Thank You produced by the Town, p. 2.

and by choosing "curiosity," the Town intentionally misled Mars as to the true purpose of the test.

35.

After not hearing back from the Town regarding the DNA test results for Mazzy, starting in mid-October, Christina Nelson began calling the Town to obtain the results. She called several times but was never told the results.

36.

The Nelsons had been allowed to bring Mazzy back home after the Town did its DNA test, but because they became fearful of what the Town might do if Mazzy's test results showed that she was even partially one of the banned breeds, they decided to put her in a foster home at their cost outside the jurisdiction of the Town pending the test results.

37.

Then, on October 22, 2013, Christina Nelson was told telephonically by a Town Hall employee that Mazzy was an American Staffordshire Terrier and that she had to be immediately removed from the Town. When she asked about the Mayor's promise to grandfather Mazzy in, she was told there was no deal.

38.

The Nelsons then went to Town Hall to obtain a copy of Mazzy's DNA test results as well as an order of removal of the dog so they could legally challenge same. The Town refused to produce or create any such order, and Plaintiffs were told by Tamara Gibson that the Ordinance was their order of removal.

39.

Plaintiffs, despite not having a written order of removal, have been verbally ordered by the Town officials to remove Mazzy from New Llano.  Plaintiffs fear seizure and banning of Mazzy based on statements by Town employees acting under color of state law; therefore, they cannot bring their dog into the Town to live with them and must board Mazzy pending legal resolution of this case.

40.

The Town can attempt to avoid any jurisdiction over this matter by never issuing a formal written order banning Mazzy, and it can continue to enforce its unconstitutional Ordinance against Mazzy and all other dogs similarly situated in the Town.  This Court has jurisdiction over this matter because the constitutional deprivations under Ordinance 4 of 2013 are capable of repetition, yet will evade judicial review if the Town continues enforcement without ever entering a written order of removal.

41.

Ms. Gibson, on behalf of the Town, also refused to give the Nelsons a copy of Mazzy's DNA test results, and further, she advised them that they would need a subpoena to obtain it. The Town took this position despite the fact that it had required the Nelsons to pay $200.00 in advance for the DNA test.

42.

However, Ms. Gibson did allow the Nelsons to quickly view the results through a glass window at Town Hall.  The Mars Wisdom Panel 2.0 test results do not show any percentages of breeds, just a breakdown of breeds.  The results as displayed were interpreted by the Nelsons to

say that Mazzy was 50 percent American Staffordshire Terrier, 25 percent Boxer, and 25 percent Boston Terrier.

43.

In order to obtain Mazzy's DNA test results from the Town, undersigned counsel had to send a public records request pursuant to La. R.S. 44:1, *et seq.,* to the Town.[17]  The Town has also refused to explain how it interpreted the Mars Wisdom Panel test results to meet the Ordinance requirement that the dog be "predominantly" of the breed American Staffordshire Terrier to be banned from the Town.  Predominant in its usual usage means 51 percent.  Mazzy's Wisdom Panel 2.0 test results[18] show her to be 50 percent American Staffordshire Terrier, and thus under the Town's own definition, Mazzy does not meet the "predominant" requirement of 51 percent for banning.

44.

Despite this fact, the Nelsons continue to board Mazzy outside the Town limits based on the Town's verbal order of removal and under threat of the Town impounding and then euthanizing Mazzy, and they continue to accrue the cost of boarding.

III.    THE ORDINANCE IS BOTH FACIALLY UNCONSTITUTIONAL AND UNCONSTITUTIONAL AS APPLIED

45.

Plaintiffs re-allege paragraphs 1 – 44 and further allege as follows:

46.

Ordinance 4 of 2013 as applied to Mazzy is unconstitutional on its face and/or as applied since it allowed the Town to require DNA testing of a dog it had never seen.  Thus the Town has the power to require a DNA test on any dog without any evidence that it may fall within the

---

[17] Exhibit H, March 13, 2014 public records request to the Town of New Llano.
[18] Exhibit I, October 21, 2013 Wisdom Panel 2.0 test results produced by the Town.

category of a banned breed, thereby rendering the Ordinance unconstitutionally vague, overbroad, and underbroad, violating the equal protection and the privileges and immunities clauses, and lacking procedural due process under federal and state constitutional law.

47.

The DNA test required under Ordinance 4 of 2013 is an invasive procedure, and under the custom and usage in the manner of its application by the Town, the Ordinance requires an owner to give the Town potentially incriminating evidence without probable cause or warrant.

48.

Ordinance 4 of 2013 fails to publicize the Town's methodologies and interpretations for determining whether a particular dog is "predominantly" a banned breed under its facially-conflicting two-tier definition, fails to quantify what genetic increment constitutes same, and fails to provide fair warning of those circumstances where genetics manifest physically to an ascertainable and sufficient phenotypic degree.  Based on Mazzy's DNA test results, which show that she is only 50 percent of a banned breed, there is no way to know how the Town is interpreting the Ordinance which has two different definitions.  Since the Mars Wisdom Panel is the  final method of determining whether a dog is a banned breed, there is no way for an owner to know with any certainty, absent such a test (which is not even reliable as discussed below), whether his or her dog is a banned breed.

49.

Upon information and belief, the Town has no protocol, practice, or procedure for determining what dogs get an initial visual inspection and what dogs must then be subjected to a DNA test.  Upon information and belief, the Town has no protocol, practice, or procedure for determining how it interprets what percentage of any banned breed is necessary for banning,

either from visual identification or from the DNA test, thereby rendering it unconstitutionally vague, overbroad, and underbroad, violating the equal protection and the privileges and immunities clauses, lacking procedural due process under federal and state constitutional law, and unconstitutional on its face or as applied.

50.

With respect to the initial visual "inspection" which precedes the necessity of a DNA test, no ascertainable, much less authoritative, source exists setting forth the standards for mixed breed dogs to which a government official may refer to avoid exercising unbridled, highly subjective discretion in "identifying" a dog as wholly or partially of the prohibited breeds. The only protocol produced by the Town indicates that "all" of its employees "have general knowledgeable [sic] on the characteristics of a pit bull," and that if there is a question, DNA testing is done.[19]  This results in complete discretion by the Town in identifying banned breeds, thereby rendering the statute unconstitutionally vague, overbroad, and underbroad, violating the equal protection and the privileges and immunities clauses, and lacking procedural due process under federal and state constitutional law.   The Ordinance is therefore unconstitutional on its face and/or as applied.

51.

Dogs perceived to have the appearance and characteristics of the prohibited breeds according to the purely subjective visual assessment of an untrained Town employee may be seized from the owner without a warrant under section 3 of the Ordinance without any hearing. Notably the Ordinance requires that an animal control officer do the seizing; however, the Town has no such officer.  Regardless, because the Ordinance allows seizure without any hearing, it

---

[19] Exhibit J, the Town's response to public records request regarding visual identification of pit bulls, *i.e.,* topics 11 and 12 in Exhibit H.

systematically threatens the Fourth Amendment and the Louisiana Constitution and is thus unconstitutional on its face or as applied.

52.

Ordinance 4 of 2013 also violates procedural due process by not have any post-seizure hearing in which the Town has to come forward under a specific burden of proof and prove its right in the first instance to seize dogs it perceives as being of a pit bull breed.  There is no post-seizure hearing, no notice of such hearing, no fact-finder, no right to counsel, no right to subpoena, no burden of proof, or no right of appeal.  In essence, there is nothing that allows a dog owner to contest the Town's interfering with his or her property rights.  The Ordinance is facially unconstitutional and/or unconstitutional as applied since it affords no procedural due process after a taking of property.  There would be no difficulty for the Town to provide these due process protections as illustrated by the fact that in the dangerous dog context, Louisiana law requires a hearing within five days of a filed petition, in front of a district court judge, with a full panoply of due process protections provided in a court of law.  *See* La. R.S. 14:102.13.  State law thus provides due process to dogs that have actually bitten or otherwise acted in a dangerous manner.  The Town fails to provide such protections to dogs that have not manifested any such behavior.

53.

In addition, the Ordinance violates the due process requirement by forcing an owner who wants to contest the Town's initial action to pre-pay $200.00 for a DNA test which can be purchased for well under $100.00.  This increased fee results in a penalty and bears no relationship to the cost of the test to the Town since it is administered by a salaried Town employee.  Requiring a defendant to "pay to play" at the first-tier hearing level violates due

process.  As such, the Ordinance is facially unconstitutional and/or unconstitutional as applied since there is no way to apply it as worded to pass constitutional due process muster.  Further, the Ordinance systematically threatens the Fourth Amendment and the Louisiana Constitution and violates the right of access to the courts.

54.

Instead, the Town relies solely on the Mars Wisdom Panel 2.0 test, which, upon information and belief, has never been allowed into evidence in a reported appellate case with the proper *Daubert* foundation anywhere in the United States.  Further, Mars itself states in its Terms and Conditions that the test "[i]s not intended to be used by animal control officials to determine whether a particular breed is legislated or banned in a particular community."[20]  Finally, and perhaps most importantly, Mars has recently amended its Terms and Conditions to add the following language:  "Nor is Wisdom Panel 2.0 intended to be used in any judicial proceedings."[21]  It clear that Mars itself does not consider its DNA test to have enough scientific validity to justify its use to ban a dog.  Thus, in place of any due process protections, **the Town uses an unscientific test for a purpose specifically precluded by the manufacturer's own terms of use.**

55.

Reliance on the Mars Wisdom Panel 2.0 test violates the equal protection and the privileges and immunities clauses of the Constitution.  The test cannot detect the genetic identification of the American Pit Bull Terrier as it is not part of its DNA database.[22] An owner of an American Pit Bull Terrier, then, has no means to dispute via a DNA test whether it is a banned breed.  Thus, an owner of this breed is therefore treated in a different manner than an

---

[20] Exhibit E.
[21] Exhibit K, amended Terms and Conditions.
[22] Exhibit L, Wisdom Panel website's list of breeds detected.

owner of the other two breeds.  Accordingly, the Ordinance violates rights of equal protection under the law and further violates the privileges and immunity clause of the constitution.

56.

Ordinance 4 of 2013 also violates substantive due process because banning breeds has not been shown to increase overall public safety.  The Preamble of the law cites no rational basis for regulating "pit bull dogs."[23]  Further, Section 10 of the Ordinance contains the following language: "[i]f the dog's test comes back that the dog is not of **any** Pit Bull breed"[24] and "[i]f the test comes back that the dog is **of** Pit Bull breed."[25]  Thus, to the extent that the Town has no protocol, practice, or procedure for identify the percentage of a breed needed to ban, there is no rational relationship between the state's objective and the point where genetics manifest physically to an ascertainable and sufficient phenotypic degree.  The state of science in 2013, including American Kennel Club and United Kennel Club standards and the terms of use in the Mars Wisdom Panel 2.0 itself, renders purebred and mixed-breed bans, such as the one provided in the Ordinance at issue, not rationally related to any government purpose, and they are certainly not the least restrictive means available to manage dogs not proven hazardous by prior harm-causing vicious propensity.  In addition, Mars itself does not consider its DNA test reliable enough to be used to ban a breed, and it specifically precludes use of the test for such a purpose or in court.  As a result, the Ordinance is unconstitutional facially and/or as applied.

57.

The State of Louisiana considers property ownership a fundamental right.  *See* Louisiana Constitution Article 1, § 4.  As such, any law interfering with ownership of property must withstand the "strict scrutiny test," and governmental action must be strictly tailored and be the

---

[23] Exhibit C.
[24] *Id.* (emphasis added).
[25] *Id.* (emphasis added).

least restrictive alternative.  Strict scrutiny presumes Ordinance 4 of 2013 to be unconstitutional. The Ordinance fails to meet the strict scrutiny and least restrictive alternative requirements since banning breeds has not been shown to increase overall public safety.  Further, Section 10 of the Ordinance contains the following language:  "[i]f the dog's test comes back that the dog is not of **any** Pit Bull breed"[26] and "[i]f the test comes back that the dog is **of** Pit Bull breed."[27]  Thus, to the extent that the Town has no protocol, practice, or procedure for identify the percentage of a breed needed to ban, there is no important governmental objective that is substantially related to the Town's objective as there is no way to tell at what point genetics manifest physically to an ascertainable and sufficient phenotypic degree.  The state of science in 2013, including American Kennel Club and United Kennel Club standards and the terms of use in the Mars Wisdom Panel 2.0 itself, renders purebred and mixed-breed bans, such as the one provided in the Ordinance at issue, not substantially related to any government purpose, and they are certainly not the least restrictive means available to manage dogs not proven hazardous by prior harm-causing vicious propensity.  In addition, Mars itself does not consider its DNA test reliable enough to be used to ban a breed, and it specifically precludes use of the test for such a purpose or in court.  As a result, the Ordinance is unconstitutional facially and/or as applied under the Louisiana Constitution.

## IV.    CLAIMS FOR RELIEF AGAINST THE TOWN OF NEW LLANO

### 58.

All above allegations are incorporated by reference herein and reasserted as to claims one through eight below.

---

[26] *Id.* (emphasis added).
[27] *Id.* (emphasis added).

### A.      *First Claim*

59.

Pursuant to 28 U.S.C. §§ 2201 – 2202  and 42 U.S.C. § 1983, Plaintiffs seek prospective injunctive relief to prevent the ongoing violation of federally-protected Constitutional rights to enjoin the City from enforcing and enacting breed-specific prohibitions under Ordinance 4 of 2013 based on facial and as applied unconstitutionality in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution as stated below, and to mandate that the Town provide a meaningful due process opportunity to contest the unilateral, permanent determination that a dog is a banned breed without the use of the Mars Wisdom Panel 2.0 test and without any fee.

60.

The Town should be enjoined from using a vague ordinance with a facially-conflicting two-tier definition of pit bull dogs and relying as a sole determinant on a DNA test that is inadmissible by its own terms of use and under the *Daubert* test standard.  A dog owner cannot possibly know if the ownership of his or her dog is a criminal act under the statute.

61.

Further the Town should be enjoined from charging a fee to contest the first-tier level of hearing and charging a fee of more than $100.00 above the actual cost of the test.  This increased fee results in a penalty to the dog owner and bears no relationship to the cost of the test to the Town since it is administered by a salaried Town employee.  Requiring a defendant to "pay to play" at the first-tier hearing level violates due process and the right of access to the courts.

62.

Likewise, the Town should be enjoined from seizing dogs without a warrant or probable cause based solely on visual identification. The Town should further be enjoined from requiring a DNA test, an invasive procedure which potentially incriminates the owner, without a warrant or probable cause and without a hearing.

### B.    *Second Claim*

63.

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983 finding that Ordinance 4 of 2013 is unconstitutional facially and/or as applied under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution in terms of warrantless seizure, procedural due process deprivation of liberty and property, substantive due process deprivation, vagueness, overbreadth, underbreadth, and equal protection, with respect to both mixed-breed and purebred dogs.

64.

Plaintiffs also seek a finding that Ordinance 4 of 2013 is facially, and as applied, unconstitutional under the Fourteenth Amendment for failing to provide any opportunity to be heard upon a unilateral, permanent designation of a dog as a banned breed pursuant to the results of the scientifically unsupported Mars Wisdom Panel 2.0 test for which an owner is required to pre-pay $200.00 and after which an owner is denied an opportunity to dispute the results.

65.

The Ordinance is overly vague with a two-tiered facially-conflicting definition of pit bull dogs, and it relies solely on a DNA test that is inadmissible in court by its own terms of use and

under the *Daubert* test standard.  A dog owner cannot possibly know if the ownership of his or her dog is a criminal act under the Ordinance.

66.

Further the fee charged by the Town to contest the first-tier level of hearing should be declared violative of due process and the right of access to the courts.  Charging a fee of more than $100.00 over the actual cost of the test should be declared a penalty which bears no relationship to the cost of the test to the Town since it is administered by a salaried Town employee.  Requiring a defendant to "pay to play" at the first-tier hearing level violates due process and the right of access to the courts.

67.

Likewise, the Town should be enjoined from seizing dogs without a warrant or probable cause based solely on visual identification.  The Town should further be enjoined from requiring a DNA test, an invasive procedure which potentially incriminates the owner, without a warrant or probable cause and without a hearing.

68.

Plaintiffs also seek a finding vacating *ab initio* Mazzy's designation as a banned pit bull under the Ordinance.

*C*.      *Third Claim*

69.

Plaintiffs seek injunctive relief pursuant to Article 1, § 2 of the Louisiana Constitution to enjoin the Town from enforcing and enacting breed-specific prohibitions under Ordinance 4 of 2013 and to mandate that the Town provide a meaningful opportunity to contest the unilateral,

permanent determination that a dog is a banned breed without the use of the Mars Wisdom Panel 2.0 and without an owner's having to pay any fee.

70.

The Town should be enjoined from using a vague ordinance with a facially-conflicting two-tiered definition of pit bull dogs and relying as a sole determinant on a DNA test that is inadmissible in court by its own terms of use and under the *Daubert* test standard.  A dog owner cannot possibly know if the ownership of his or her dog is a criminal act under the Ordinance.

71.

Further, the Town should be enjoined from charging a fee to contest the first-tier level of hearing and charging a fee of more than $100.00 above the actual cost of the test.  The increased fee results in a penalty to the dog owner and bears no relationship to the cost of the test to the Town since it is administered by a salaried Town employee.  Requiring a defendant to "pay to play" at the first-tier hearing level violates due process and the right of access to the courts.

72.

Likewise, the Town should be enjoined from seizing dogs without a warrant or probable cause based solely on visual identification.  The Town should further be enjoined from requiring a DNA test, an invasive procedure which potentially incriminates the owner, without a warrant or probable cause and without a hearing.

73.

In addition, Plaintiffs seek injunctive relief under the Louisiana Constitution to enjoin the Town from enforcing and enacting the Ordinance since it interferes with a fundamental property right under Louisiana law, cannot survive strict scrutiny, and does not use the least restrictive means of regulation.  The Ordinance is presumed unconstitutional under this standard and should

be declared unconstitutional for failure to serve important governmental interests substantially related to keeping the public safe from dangerous dogs.

### D.    *Fourth Claim*

74.

Plaintiffs seek a declaratory judgment pursuant to Louisiana law finding Ordinance 4 of 2013 to be facially, and as applied, unconstitutional under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution in terms of seizure, procedural due process deprivation of liberty and property, substantive due process deprivation, vagueness, overbreadth, underbreadth, and equal protection, and also to be unconstitutional under Article 1, § 2 of the Louisiana State Constitution with respect to both mixed-breed and purebred dogs.

75.

Plaintiffs also seek a declaratory judgment pursuant to Louisiana law finding that Ordinance 4 of 2013 is facially, and as applied, unconstitutional under the Fourteenth Amendment and Article 1, § 2 of the Louisiana State Constitution for failing to provide any opportunity to be heard upon a unilateral, permanent designation of a dog as a banned breed pursuant to the results of the unscientifically supported Mars Wisdom Panel 2.0 test for which an owner is required to pre-pay $200.00 to the Town even though the test costs less than $100.00 and after which an owner is denied an opportunity to dispute the results.

76.

The Ordinance is void for vagueness as it contains a facially-conflicting two-tiered definition of pit bull dogs, and it relies as a sole determinant on a DNA test that is inadmissible in court by its own terms of use and under the *Daubert* test standard. A dog owner cannot

possibly know if the ownership of his or her dog is a criminal act under the statute.  The Town should be enjoined from using this vague Ordinance.

77.

Further, the Town should be enjoined from charging a fee to contest the first-tier level of hearing and charging a fee of over $100.00 above the actual cost of the test.  The increased fee results in a penalty to the dog owner and bears no relationship to the cost of the test to the Town since it is administered by a salaried Town employee.  Requiring a defendant to "pay to play" at the first-tier hearing level violates due process and the right of access to the courts.

78.

Likewise, the town should be enjoined from seizing dogs without a warrant or probable cause based solely on visual identification.  The Town should further be enjoined from requiring a DNA test, an invasive procedure which potentially incriminates the owner, without a warrant or probable cause and without a hearing.

79.

Plaintiffs also seek a finding vacating *ab initio* Mazzy's designation as a banned pit bull under the Ordinance.

80.

Plaintiffs seek a declaratory judgment under the Louisiana Constitution that the Ordinance interferes with a fundamental property right under Louisiana law and cannot survive strict scrutiny, nor does it use the least restrictive means of regulation.  The Ordinance is presumed unconstitutional under this standard and should be declared unconstitutional for failure to serve important governmental interests substantially related to keeping the public safe from dangerous dogs.

### E.    Fifth Claim

81.

Plaintiffs seek injunctive relief under Louisiana law enjoining the Town from enforcing Ordinance 4 of 2013 with "Code Enforcement" officers and/or Fire Department employees since the Ordinance specifically states such duties are to be performed by an animal control officer, and the use of "Code Enforcement" officers and/or Fire Department employees is *ultra vires*.  As such, all actions taken to classify Mazzy as a banned breed and Mazzy's status as a banned breed should be declared null and void, and the Town should be enjoined from further enforcement until an animal control officer performs the duties prescribed by the Ordinance.

### F.    Sixth Claim

82.

Plaintiffs seek a declaratory judgment under Louisiana law that the Town's enforcement of Ordinance 4 of 2013 using "Code Enforcement" officers and Fire Department employees to enforce the Ordinance is *ultra vires* since the Ordinance specifically states such duties are to be performed by an animal control officer.  As such, all actions taken to classify Mazzy as a banned breed and Mazzy's status as a banned breed should be declared null and void, and the Town should be enjoined from further enforcement until an animal control officer performs the duties prescribed by the Ordinance.

### G.    Seventh Claim

83.

Plaintiffs seek specific performance of the contract entered into between the Town and Mars, and to which Plaintiffs are third-party beneficiaries, preventing the Town from using Mazzy's DNA test to ban her.  The Town agreed with Mars that it would not use the test results

for that purpose, and it has breached its contract with Mars. The Town should thus be prohibited from using the Mars DNA test results to ban Mazzy.

84.

Alternatively, the Town should be estopped from using the Mars test results based on its fraud in using the test after misrepresenting to Mars the purpose of the test and based on its violations of the terms of use of the test. Plaintiffs thus seek a finding vacating *ab initio* Mazzy's designation as a banned pit bull under the Ordinance.

### H.    *Eighth Claim*

85.

Plaintiffs seek to prohibit the Town, through equitable estoppel and detrimental reliance, from using the DNA results against Mazzy based on fraudulent representations made by the Mayor in the proposed deal to grandfather Mazzy in to induce the Nelsons to allow her to be DNA tested. Plaintiffs thus seek a finding vacating *ab initio* Mazzy's designation as a banned pit bull under the Ordinance

### V.    DAMAGES

86.

Finally, as set forth hereinabove, as a direct consequence of Defendant's acts and/or omissions, the Town is liable to Plaintiffs for all damages they have incurred, including but not limited to, the costs of boarding Mazzy from September 6, 2013, to the present, damages for the mental anguish and emotional distress caused by the Town's unconstitutional banning of Mazzy, statutory damages, general damages, attorney's fees and other litigation costs pursuant to 42 U.S.C. § 1988, and judicial interest from the date of demand.

## VI.    JURY DEMAND

87.

Plaintiffs hereby demand a jury trial on their claims to the extent permitted by law.

WHEREFORE, Plaintiffs, Christina Nelson and Victor Nelson, pray that Defendant, the Town of New Llano, be cited and served with a copy of this Complaint for Declaratory Relief, Injunctive Relief, and Damages as required by law, and that after all legal delays and due proceedings are had, there be judgment rendered in Plaintiffs' favor and against said Defendant for declaratory and injunctive relief as stated above, for the costs of suit, for reasonable attorney's fees and other litigation-related costs as allowed by law under 42 U.S.C. § 1988, as provided by grounds of equity, or in the alternative, statutory attorney's fees, for pre- and post-judgment interest at the highest rate permitted by law, and for all other just and equitable relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED:


/s/ Stacy R. Palowsky
**STACY R. PALOWSKY, #25203**
PALOWSKY LAW, LLC
Mailing Address:  249 Fairfield Oaks Dr.
Office Address:  210 Highway 21
Madisonville, LA 70447
Telephone:  (985) 792-1567
Facsimile:   (985) 590-5230
Email:  spalowsky@palowsky-law.com
*Attorney for Plaintiffs, Victor and Christina Nelson*

**PLAINTIFFS WILL SERVE DEFENDANT PURSUANT TO FRCP 4(j)(2) AS FOLLOWS:**

Town of New Llano,
Through Mayor Freddie Boswell
109 Stanton Street
New Llano, LA 71461

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHRISTINA RENEA NELSON and** | * | **CIVIL ACTION NO.** |
| **VICTOR DAVID NELSON** | * | |
| **Plaintiffs** | * | |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | |
| **TOWN OF NEW LLANO** | * | **MAGISTRATE** |
| **Defendant** | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## V E R I F I C A T I O N

STATE OF LOUISIANA

PARISH OF VERNON

      BEFORE ME, the undersigned authority, personally came and appeared:

### VICTOR DAVID NELSON

a person of the full age of majority, who did depose and state that he is a plaintiff in the above-referenced matter, and that he has read the foregoing Complaint for Declaratory Relief, Injunctive Relief, and Damages, and all of the allegations of fact contained therein are true and correct to the best of his information, knowledge and belief.

 

**VICTOR DAVID NELSON**

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _14th_ DAY
OF APRIL, 2014.

_Clara L. Wiley_ 006595
NOTARY PUBLIC

## UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHRISTINA RENEA NELSON and** | * | **CIVIL ACTION NO.** |
| **VICTOR DAVID NELSON** | * | |
| **Plaintiffs** | * | |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | |
| **TOWN OF NEW LLANO** | * | **MAGISTRATE** |
| **Defendant** | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |

**************************************

## V E R I F I C A T I O N

STATE OF LOUISIANA

PARISH OF VERNON

      BEFORE ME, the undersigned authority, personally came and appeared:

CHRISTINA RENEA NELSON

a person of the full age of majority, who did depose and state that she is a plaintiff in the above-referenced matter, and that she has read the foregoing Complaint for Declaratory Relief, Injunctive Relief, and Damages, and all of the allegations of fact contained therein are true and correct to the best of her information, knowledge and belief.

_____
CHRISTINA RENEA NELSON

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _14th_ DAY
OF APRIL, 2014.

_____
NOTARY PUBLIC