# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHRISTINA RENEA NELSON and** | * | **CIVIL ACTION NO. 2:14-cv-00803** |
| **VICTOR DAVID NELSON** | * | |
| **Plaintiffs** | * | |
| | * | **JUDGE PATRICIA MINALDI** |
| **VERSUS** | * | |
| | * | |
| **TOWN OF NEW LLANO** | * | **MAGISTRATE KATHLEEN KAY** |
| **Defendant** | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |
| ************************************** | | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF

## TABLE OF CONTENTS

I.  Concise Statement of Reasons in Support of Motion…………………………………1

II.  Statement of Facts………………………………………………………………....2

III.  Authorities, Analysis, and Argument…………………………………………...……8

   A.  Standard for Preliminary Injunctions under Rule 65……………………...…..8

   B.  Examination of the Four Preliminary Injunction Factors………………………..9

      1.  Irreparable Harm……………………………………………………..9

      2.  Likelihood of Success on the Merits and Actual Success on the Merits……………………………………………………...12

         a.  The Ordinance Provides No Procedural Due Process, and Plaintiffs Have a Substantial Likelihood of Success and Can Show Actual Success on Their Due Process Claims…………13

         b.  Requiring the Nelsons to "Pay to Play" Violates Due Process Requirements, and Plaintiffs Have a Substantial Likelihood of Prevailing on the

Pay-to-Play Due Process Claim and Can Show Actual Success on the Pay-to-Play Claim………………………....…16

c.    Plaintiffs Have a Substantial Likelihood of Prevailing on Their Void for Vagueness Claim and Can Show Actual Success on Their Void for Vagueness Claim………………………………………………….……18

i.    The Definition of "Pit Bull" Is Unconstitutionally Vague…………………………………………….……18

ii.    Visual Identification by the Animal Control Officer Renders the Ordinance Unconstitutionally Vague……....19

iii.    The Town Relies on a DNA Test Which Is Not Permitted to be Used for Breed Ban Ordinances…………21

d.    The Governmental Interest……………………………....…22

3.    Favorable Balance of Hardships………………………………………23

4.    Positive Effect on the Public Interest……………………………………23

C.    Bond……………………………………………………………....…23

D.    Equitable Remedy………………………………………………………24

IV.    Conclusion……………………………………………………………25

## TABLE OF AUTHORITIES

**Jurisprudence**                                                                                    **Page**

*American Dog Owners Ass'n v. City of Lynn*, 533 N.E.2d 642 (Mass. 1989)……………………18

*Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987)…………………………...12

*Armstrong v. Manzo*, 380 U.S. 545 (1965)…………………………………………………………13

*Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984)……………………………………………………13

*Barrios v. Safeway Ins. Co.,* 2011–1028 (La. App. 4 Cir. 3/21/12), 97 So. 3d 1019……………11

*Black Fire Fighters Ass'n of Dall. v. City of Dallas*, 905 F.2d 63 (5th Cir. 1990)………………..8

*Cardelle v. Miami-Dade County Code Enforcement*, 2010 Fla. Env. Lexis 111, 2010 FALR 175, 17 Fla. L. Weekly Supp 923a (Circ. Ct. 11th JDC 2010)...........................20

*Causeway Medical Suite v. Foster*, 43 F.Supp.2d 604 (E.D.La. 1999)...................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).................................20

*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012)....................8, 9

*Dias v. City and County of Denver*, 2010 WL 3873004 (D.Colo. 2010)..............................22

*Downey v. Pierce County*, 267 P.3d 445 (Wash.App. Div. 2 2011)....................................17

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985)...........................................................................................................9

*Fuentes v. Shevin*, 407 U.S. 67 (1972)...........................................................................13

*Fund for Louisiana's Future v. Louisiana Bd. of Ethics*, --- F.Supp.2d ----, 2014 WL 1764781, (E.D.La. 2014).................................................................................12

*Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001)................................................16

*Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194 (5th Cir. 1984).........................................9

*Louisville Kennel Club, Inc. v. Louisville/Jefferson County Metro Gov't*, 2009 WL 3210690 (W.D.Ky. 2009)...............................................................15, 17, 22

*Mansour v. King County*, 131 Wash.App. 255 (Wash.App. Div. 1 2006)...........................15

*Maldondo v. Municipality of Barceloneta*, 682 F.Supp.2d 109 (D.Puerto Rico 2010)..............22

*Mathews v. Eldridge*, 424 U.S. 319 (1976)....................................................13, 14, 15, 17

*Pasco v. Riehl*, 635 So. 2d 17 (Fla. 1994)....................................................................15

*Phillips v. San Luis Obispo County Dep't of Animal Regulation*, 183 Cal.App.3d 372 (Cal. App. 2 Dist. 1986)...............................................................................................14

*Sak v. The City of Aurelia, Iowa*, 832 F.Supp.2d 1026 (N.D.Iowa 2011).........................24

*Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969)..............................14

*State v. Cowan*, 814 N.E.2nd 846 (Ohio 2004)........................................................15, 20

*Van Patten v. City of Binghamton*, 137 F.Supp.2d 98 (N.D.N.Y. 2001)............................14

*U.S. v. Salerno*, 481 U.S. 739 (1987)……………………………………………………………..18

*U.S. v. State of La.*, 952 F.Supp. 1151 (W.D.La. 1997)……………………………………………24

*Vitek v. Jones*, 445 U.S. 480 (1981)……………………………………………………………13

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982)……………21

*Wenner v. Texas Lottery Com'n*, 123 F.3d 321 (5th Cir. 1997)………………………………..24

*Women's Medical Ctr. of Northwest Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001)……………18

## Statutory Authorities

Federal Rule of Civil Procedure 65………………………………………………………1, 8, 23

La. R.S. 3:2773……………………………………………………………………………...13

La. R.S. 14:102.12, *et seq*..…………………………………………………………………23

La. R.S. 14:102.14……………………………………………………………………………2

## Miscellaneous Authorities

http://www.merriam-webster.com/dictionary……………………………………………………19

MAY IT PLEASE THE COURT:

For the reasons set forth below, Plaintiffs, Christina Renea Nelson and her husband, Victor David Nelson, move for a preliminary and/or permanent injunction enjoining Defendant, the Town of New Llano, from enforcing Ordinance 4 of 2013, which prohibits "pit bull" dogs as defined therein from being within the Town's corporate limits, and enjoining the Town from banning their dog Mazzy.  Plaintiffs also request that this Court set the bond required by F.R.C.P. 65(c) at a nominal amount.  Alternatively, and only in the event that this requested relief is denied, Plaintiffs move the Court to exercise its equitable powers and issue an order allowing Mazzy to return home until there is a final judgment in this litigation.

**I.**     **CONCISE STATEMENT OF REASONS IN SUPPORT OF MOTION**

Plaintiffs' Motion, which is based on their verified Complaint for Declaratory Relief, Injunctive Relief, and Damages, Christina Nelson's Affidavit with attached exhibits, Dr. Kristopher Irizarry's affidavit with attached exhibits, and the statutory and case law discussed herein, should be granted because the Town of New Llano's Ordinance 4 of 2013 is unconstitutional for multiple reasons.  As explained below, the Ordinance provides absolutely no due process in the form of a hearing either prior to after depriving citizens of their personal property.  Further, the Ordinance violates the due process clause of the Fourteenth Amendment by requiring a dog owner to pay a fee to purchase a DNA test to contest the animal control officer's determination of his or her dog as a "pit bull."  Lastly, the Ordinance is void for vagueness in that it has two different definitions of pit bulls, it allows an animal control officer unfettered discretion in labeling a dog as a pit bull, and it relies on a DNA test which is not permitted by the manufacturer to be used to ban any particular breed of dog from a community.

1

Further, the Nelsons have shown irreparable injury, a substantial likelihood of success on the merits of their claims, as well as actual success on the merits, a favorable balance of hardships, and that there will be no adverse effect on the public interest if their relief is granted.  Thus, their Motion should be granted.

## II.    STATEMENT OF FACTS

As set forth in the verified Complaint as well as in the attached Affidavit of Christina Nelson, which is incorporated herein as if copied *in extenso,* Plaintiffs are the owners of Mazzy, a mixed-breed dog whom they have owned and loved since 2011.[1]  Mazzy was rescued from a shelter in Indiana, and no breed pedigree for her was ever provided to the Nelsons, who considered her to be a terrier mix.  At no time did they believe that Mazzy was an "American Staffordshire Terrier."  Further, at all times relevant herein, Mazzy was regarded by Plaintiffs as both a sentient personality and as an immediate family member.  Mazzy has no animal control history or complaints, is not aggressive, and has never been declared a "dangerous dog" as defined in La. R.S. 14:102.14.[2]

Plaintiff Victor Nelson is a staff sergeant in the United States Army.  In June 2013, the Nelsons found out that the Army was transferring them to Fort Polk in Vernon Parish.[3]  They then began looking for a home within commuting distance of Fort Polk.  They informed their real estate agent that they did not want to live in an area with a ban or restrictions on any particular breed of dog.  Their agent then gave them a listing of dog-friendly rental homes, and after deciding which house they wanted to rent, and to make sure there would not be a problem with having dogs in the home, the Nelsons even showed their real estate agent pictures of Mazzy.  The agent stated that

---

[1] Exhibit 1, Affidavit of Christina Nelson, ¶ 2.
[2] *Id.*
[3] *Id.* at ¶ 3.

there would be no problem having her live in the rental home.  Thus in late August 2013, Plaintiffs signed an agreement to lease a house in New Llano.[4]

Shortly thereafter, Christina Nelson went to the water department to have the water turned on in the rental home.  While there, she received a document entitled "Welcome to the Town of New Llano."  At the bottom, there was handwritten language stating, "No pit bulls or pit bull breeds of any kind allowed!!!"[5]  A uniformed water company worker asked Christina Nelson what kind of dogs she had, and she replied that she had a terrier mix and Border Collie.[6]

Immediately after having this discussion with the water department employee, Christina Nelson returned to her real estate agent company and informed her agent that she had learned of the "pit bull" ban in the Town.  The agent told her since Mazzy was of mixed breed, there would be no problem with having her live there.[7]  Thereafter, at the beginning of September 2013, the Nelsons moved into and had their belongings delivered to their home in New Llano.  While they had been looking for homes, they had been boarding their two dogs, but on or about September 5, 2013, the Nelsons brought them home.[8]

On the morning of September 6, 2013, the Fire Chief/Marshall, Jim Ratcliff, came to the Nelsons' home while they were unavailable and, apparently on behalf of "Code Enforcement," left a notice on the door that he had come to "look at" their dogs.[9]  As a result of the notice, the Nelsons, who knew nothing of the local law which apparently banned pit bulls and who had not been provided by any agent of the Town a copy thereof, decided to board Mazzy at a veterinarian's

---

[4] *Id.* at ¶ 4.
[5] *Id.* at ¶ 5 with Exhibit A, notice from the water department, attached thereto.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 7.
[8] *Id.* at ¶ 8.
[9] *Id.* at ¶ 9 with Exhibit B, doorknob Code Enforcement notice, attached thereto.

office outside of New Llano in order to have the opportunity to read the language of the Ordinance and understand how to proceed.[10]

Subsequent to boarding Mazzy, Christina Nelson called the number on the Code Enforcement notice and asked the inspector to return.[11] Later in the day on September 6, 2013, Jim Ratcliff returned in his New Llano Fire Department Uniform, along with another similarly-dressed male fire department officer. Mr. Ratcliff was introduced to the Nelsons' Border Collie, and nothing was said about that dog. The Nelsons also let Mr. Ratcliff know that they had a dog of mixed breed origin but that they did not know her genetic information because she had been rescued from a shelter.[12]

Mr. Ratcliff then provided the Nelsons with a copy of Ordinance 4 of 2013 prohibiting "pit bull" dogs within the corporate limits of the Town.[13] However, the language of the Ordinance made it clear that there was no way for an owner to determine whether his or her dog was banned pursuant to the terms of the Ordinance because it had two definitions of pit bulls, one requiring a majority of traits of three named breeds (Staffordshire Bull Terrier, American Staffordshire Terrier, and American Pit Bull Terrier), and another in Section 10 of the Ordinance which stated that a dog would not be banned if it was "not of **any** Pit Bull breed."[14] This scared Plaintiffs because "any" could be interpreted as one percent. The Nelsons did not know and have never been told how this facially-conflicting definition is interpreted, and thus they could have no knowledge based on the Ordinance whether their dog would be banned.[15] The Nelsons also questioned how the Fire Department and/or "Code Enforcement" had the authority to enforce the ban as the

---

[10] *Id.* at ¶ 10.
[11] *Id.* at ¶ 11.
[12] *Id.* at ¶ 12.
[13] *Id.* at ¶ 13 with Exhibit C, Ordinance 4 of 2013, attached thereto.
[14] *Id.* (emphasis added).
[15] *Id.*

Ordinance requires an "animal control officer" to perform the duties thereunder.  Mr. Ratcliff simply advised there was not an animal control officer in the Town.[16]

Still, though, trying to avoid legal action and at Mr. Ratcliff's suggestion, the Nelsons then met with the New Llano Mayor, Freddie Boswell, on or about September 9, 2013.  He advised that if they would allow the Town to perform, at a cost of $200.00 paid in advance by Plaintiffs, a DNA test pursuant to the Ordinance and the results came back that Mazzy was a banned breed, he would "grandfather" her in and let her stay home.[17]  Importantly, the test used by the Town, the Mars Wisdom Panel 2.0, costs $79.99 when purchased from the manufacturer.[18]  It can also be purchased for $62.99 on the website Amazon.com[19] or for $89.99 from PetSmart.[20]  However, the Town charged the Nelsons $200.00 for the test, thereby profiting by at least $100.00 on the test.[21]

Nonetheless, on September 9, 2013, the Nelsons relied on the Mayor's representations and paid $200.00 for a DNA test to be performed by the Town.[22]  Thereafter, on September 16, 2013, still relying on the Mayor's statements, the Nelsons took Mazzy for a cheek DNA swab.  The swab was taken in the parking lot of the Town Hall by Tamara Gibson, a salaried Town Hall employee who stated that they should not get their hopes up with regard to the Mayor's statement that he would have grandfather Mazzy in if the test revealed she was a banned breed.  Up to that point, no one from the Town had even seen Mazzy to determine whether she fell into a class of dogs that should be subject to a DNA test per the Ordinance.[23]

---

[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15.
[18] *Id.* at ¶ 16.
[19] *Id.*
[20] *Id.*
[21] *Id.* with Exhibit D, Test Kit Thank You produced by the Town, attached thereto and evidencing that the Town purchased the test from the manufacturer.
[22] *Id.* at ¶ 17 with Exhibit E, Mrs. Nelson's receipt for the DNA test, attached thereto.
[23] *Id.*

The Mars Wisdom Panel 2.0 test kit box contains a document that has instructions and Terms and Conditions which include the following condition:

> Many cities and communities have breed-specific ordinances and laws that may require special handling or prohibit ownership of some dogs with a particular breed in their genetic background. Wisdom Panel 2.0 is **not intended to be used by regulatory or animal control officials to determine whether a particular breed is legislated or banned in a particular community.** . . .[24]

After taking the DNA of Mazzy, the Town had to submit the test to Mars for processing.[25] The submission process had to begin online at www.wisdompanel.com where the Town had to agree to the test's terms and conditions, including that the test would not be used to determine whether a particular breed is banned from a community.[26] Additionally, the website's frequently asked questions, or FAQs, contained the following question and answer:

> **Can regulatory/animal control officials use the Wisdom Panel® to determine whether breeds are legislated or banned in a particular community?**
>
> *Wisdom Panel*® is designed and intended to be used solely to identify the breed history of a dog and no other purpose is authorized or permitted.
>
> *Wisdom Panel*® is not intended to predict behavior in any particular dog. Each dog is unique and its physical and behavioral traits will be the result of multiple factors, including: genetics, training, handling and environment.[27]

Clearly, though, the Town's purpose was to ban Mazzy. Significantly, the Town's response to Plaintiffs' public records request shows the Town misrepresented to Mars the purpose of the test. When completing the dialogue box on the Mars website that asked for what "purpose" the test was being done, the Town chose "curiosity"[28] even though the same drop-down menu

---

[24] *Id.* at ¶ 18 with Exhibit F, Terms and Conditions, attached thereto (emphasis added).
[25] *Id.* at ¶ 19 with Exhibit G, instructions for taking and submitting the DNA for testing, attached thereto.
[26] *Id.*
[27] *Id.* at ¶ 21, citing to http://www.wisdompanel.com/why_test_your_dog/faqs/#785.
[28] *Id.* at ¶ 22, citing to Exhibit D attached thereto.

offers the alternative purpose of "Legislation/Ordinance,"[29] which was the Town's actual reason for the test.

Because Plaintiffs had not heard back from the Town regarding Mazzy's DNA test results by mid-October, Christina Nelson began calling to obtain the results.[30]  The Nelsons had been allowed to bring Mazzy back home after the Town did its DNA test, but because they became fearful of what the Town might do if the results showed that she was even partially one of the banned breeds, they decided to put her in a foster home at their cost outside the jurisdiction of the Town pending the test results.[31]  Then, on October 22, 2013, Christina Nelson was told finally told over the telephone by a Town Hall employee that Mazzy was an American Staffordshire Terrier and that she had to be immediately removed from the Town.  When she asked about the Mayor's promise to grandfather Mazzy in, she was told there was no deal.[32]

The Nelsons then went to Town Hall to obtain a copy of Mazzy's DNA test results as well as an order of removal of the dog so they could legally challenge same.  The Town refused to produce or create any such order, and Plaintiffs were told by Tamara Gibson that the Ordinance was their order of removal.  Ms. Gibson, on behalf of the Town, also refused to give the Nelsons a copy of the results, and further, she advised that they would need a subpoena to obtain them even though the Town had required the Nelsons to pay $200.00 in advance for the test.[33]  However, Ms. Gibson did allow the Nelsons to quickly view the results through a glass window.[34]  Plaintiffs were later able to obtain Mazzy's actual test results through a public records request. They show that

---

[29] *Id.* with Exhibit I, screen-shot of drop down menu from www.wisdompanel.com, attached thereto.
[30] *Id.* at ¶ 23.
[31] *Id.* at ¶ 24.
[32] *Id.* at ¶ 25.
[33] *Id.* at ¶ 26.
[34] *Id.* at ¶ 27.

Mazzy has one parent who is an American Staffordshire Terrier and one who is a Boston Terrier/Boxer mix.[35]

Plaintiffs, despite not having a written order of removal, have been verbally ordered by the Town officials to remove Mazzy from New Llano. Plaintiffs fear seizure, banning, and the destruction of Mazzy based on statements by Town employees; therefore, they cannot bring their dog into the Town to live with them and must board Mazzy pending legal resolution of this case.[36] The Town's actions have caused irreparable harm as discussed below, which will continue if a preliminary injunction is not granted.

### III.    AUTHORITIES, ANALYSIS, AND ARGUMENT

#### A.    Standard for Preliminary Injunctions under Federal Rule of Civil Procedure 65

Federal Rule of Civil Procedure 65(a) allows for the granting of a preliminary injunction upon notice to the adverse party. The standard for the granting of such an injunction was articulated in *Dennis Melancon, Inc. v. City of New Orleans,* 703 F.3d 262 (5th Cir. 2012):

> Generally, a movant must satisfy *each* of four traditional criteria in order to be entitled to a preliminary injunction: (1) irreparable injury[,] (2) substantial likelihood of success on the merits, (3) a favorable balance of hardships, and (4) no adverse effect on the public interest.

*Id*. at 268 (citing *Black Fire Fighters Ass'n of Dall. v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990))(emphasis in original). Injunctive relief is an appeal to a court's equity jurisdiction, and a request for same is considered within a court's sound discretion. *Causeway Medical Suite v. Foster*, 43 F.Supp.2d 604, 610 (E.D.La. 1999). As will be shown below, the facts of this case meet the threshold requirements of all four criteria; therefore, Plaintiffs respectfully submit that this Court should exercise its sound discretion and grant them the relief requested herein.

---

[35] *Id.* with Exhibit J, test results, attached thereto.
[36] *Id.* at ¶ 28.

**B. Examination of the Four Preliminary Injunction Factors**

   **1. Irreparable Harm**

The concept of irreparable harm was fleshed out by the Fifth Circuit Court of Appeals in *Dennis Melancon*, 703 F.3d 262. "[W]hen 'the threatened harm is more than de minimis, it is not so much the magnitude but the *irreparability* that counts for purposes of a preliminary injunction.'" *Id.* at 279 (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985))(emphasis in original). For purposes of an injunction, an injury is irreparable "only 'if it cannot be undone through monetary remedies.'" *Id.* (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)).

In the matter at hand, the harm being done by Defendant's unconstitutional Ordinance cannot be "undone" by an award of monetary damages. Plaintiffs' dog has been boarded away from her family for over seven months and has been showing signs of kennel stress. Mazzy is currently being crated all day except for three bathroom walks per day.[37] Because of the Nelsons' schedules and the hours of operation of the veterinarian's office where Mazzy is currently kenneled, they are only able to see Mazzy and take her out an average of one hour per week on Saturdays, and when they do see her, it takes Mazzy 30 minutes to calm down enough to even sit and be petted.[38]

Significantly, Christina Nelson has noticed that Mazzy is starting to change.[39] For example, Mazzy has been getting more depressed, anxious, and fearful the longer she stays away from home.[40] Christina Nelson has also noticed Mazzy is starting to lose her hair.[41] She fears that

---

[37] *Id.* at ¶ 36.
[38] *Id.* at ¶ 35.
[39] *Id.* at ¶ 37.
[40] *Id.*
[41] *Id.*

if Mazzy's detention continues pending the litigation of this case, she will be irreparably harmed, and her stability as a dog forever damaged.[42]

Mazzy is currently four years old.[43]  It is common knowledge that a dog's life span is short, so the time Mazzy has already been boarded represents a significant portion of her life, time that she will never be able to spend with her owners.[44]  If this case is litigated for even three years, Mazzy will be seven years old at the conclusion.  This would represent a large part of her relatively short life spent away from home and kenneled.[45]  During that time, the Nelsons will experience irreparable harm in not being able to spend time with her, and Mazzy's prolonged kenneling will continue to exacerbate her kennel stress and thereby change her personality, and the Nelsons will forever lose the dog that they once had known.[46]

As a result of the banning of Mazzy, the Nelsons have never even unpacked the boxes which they moved to their house because they fear that at any moment they will have to move in order to keep Mazzy.[47]  Moreover, as a result of the banning of Mazzy, Christina Nelson has obtained a referral for 61 sessions of psychiatric treatment for anxiety and depression, although she has yet to find a local psychiatrist who takes new patients and is accepted by her health insurance, but she continues to search for this help.[48]  She recently been given a prescription for Zoloft, an anti-depressant, due to the current situation with Mazzy.[49]  Additionally, as a result of the banning of Mazzy and Christina Nelson's inability to discuss her feelings on the matter, the Nelsons have experienced marital communication problems.[50]  In fact, the Army has recently sent

---

[42] *Id.*
[43] *Id.* at ¶ 38.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.* at ¶ 30.
[48] *Id.* at ¶ 31.
[49] *Id.*
[50] *Id.* at ¶ 32.

them to Galveston, Texas, for a weekend retreat of counseling and other activities designed to improve marriages.[51]

Christina Nelson continues to worry about Mazzy constantly because she is being boarded day-to-day by a veterinarian who sometimes has trouble accommodating Mazzy's boarding with the requirements of his veterinarian practice.[52]  Christina Nelson feels stress and anxiety as to whether she can find another place to safely board Mazzy during the pendency of this case should the veterinarian not have room for Mazzy.[53]

There is also the criminal element of the offense to consider in the irreparable harm context. According to Section 6, entitled "Penalty," possessing a pit bull "**shall** result in a citation with a fine of $500.00 or more and a maximum of 60 days in jail, or both."[54]  The Nelsons thus potentially face jail time if caught with their dog in the Town of New Llano.

It is also important to keep in mind that we are discussing the fate of a living, sentient being that the Nelsons consider family.  The bond between a companion animal and the human animal is real, and one Louisiana court has recently taken judicial notice of same.  In *Barrios v. Safeway Ins. Co.,* 2011–1028 (La. App. 4 Cir. 3/21/12), 97 So. 3d 1019, the Fourth Circuit Court of Appeal, in analyzing a mental anguish damage award to the owners of a dog who was hit and killed by a car, stated as follows:

> Although a pet is considered corporeal movable property in Louisiana, clearly, pets are not inanimate objects. This Court takes judicial notice of the emotional bond that exists between some pets and their owners and the "family" status awarded some pets by their owners.

---

[51] *Id.* at ¶ 33.
[52] *Id.* at ¶ 34.
[53] *Id*.
[54] Exhibit 1-C (emphasis added).  Plaintiffs also note that the penalty provision is vague and ambiguous in that it states that a violation "shall" result in a fine "and" jail time "or both."  Thus, the first part of the statement would lead to the conclusion that violation of the Ordinance results in both a fine and jail time, while the last part of the statement would lead to the conclusion that there is only a possibility of being subjected to both penalties.

*Id.* at 1023-24.

Likewise, Mazzy is considered by the Nelsons to be a member of their family.[55]  The separation of the Nelsons from Mazzy, the interference with that family bond, and the fact that the ongoing separation is changing Mazzy all support a finding that the Nelsons have already suffered injury which is not compensable via monetary relief.  Accordingly, Plaintiffs respectfully submit that this Court should consider the first requirement for obtaining a preliminary or permanent injunction to have been met.

### 2.  Likelihood of Success on the Merits and Actual Success on the Merits

There are fatal due process issues that as a matter of law doom Ordinance 4 of 2013 and which allow this Court to enter not only a preliminary injunction, but a permanent injunction as well.  Where a plaintiff seeks permanent injunctive relief, the test is the same as the four-part one for preliminary injunctive relief except that the movant must show actual success on the merits instead of a mere likelihood of success.  *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987).  While a permanent injunction is generally only granted after a full trial on the merits, it can also be granted when the movant "otherwise has demonstrated entitlement to judgment as a matter of law."  *Fund for Louisiana's Future v. Louisiana Bd. of Ethics,* --- F.Supp.2d ----, 2014 WL 1764781, *4 (E.D.La. 2014).

For purposes of this Motion, Plaintiffs will only address those issues that can be decided as a matter of law by simply reviewing the Ordinance and applying the applicable law.  Thus, the claims addressed are the following:  (1) the total lack of procedural due process; (2) the lack of due process requiring criminal defendants to "pay to play"; and (3) the lack of due process based

---

[55] Exhibit 1 at ¶ 2.

on the Ordinance's being void for vagueness.  A finding of unconstitutionality on any one of these grounds is fatal to the Ordinance and must result in the granting of injunctive relief.

> **a.  The Ordinance Provides <u>No</u> Procedural Due Process, and Plaintiffs Have a Substantial Likelihood of Success and Can Show Actual Success on Their Due Process Claims.**

The Town of New Llano's Ordinance banning "pit bull dogs" provides **no** right to a dog owner to be heard or to defend a classification of a banned dog after seizure, and thus it is unconstitutional as a matter of law.  The only way an owner can contest the classification is to pre-pay $200.00 for a DNA test which retails for less than $100.00 and which the manufacturer says is not authorized or permitted to be used to determine whether a dog is a banned breed under an ordinance.  After the DNA test is done, however, there is no way for an owner to contest the results.

States are free to create liberty interests which are not granted by the federal constitution, but when they do so, due process protections are then necessary "to insure that the state-created right is not arbitrarily abrogated."  *Vitek v. Jones*, 445 U.S. 480, 489 (1981).  Dogs have been classified as personal property in the State of Louisiana.  La. R.S. 3:2773.  Thus, the ownership of a dog presents a fundamental property and/or liberty interest protected under the Louisiana state constitution.  *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984).  Accordingly, the taking of a dog triggers Fourteenth Amendment due process protections.  *Id*.

When it comes to procedural due process, it is fundamental "that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Furthermore, federal courts normally determine as a matter of law what process is due using the balancing test contained in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected

by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As far back as 1969, the Supreme Court of the United States has found laws unconstitutional when there has been no right to hearing with respect to the taking of property. *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969). The parameters of due process with respect to the "taking" of a dog have evolved in the context of breed bans and dangerous dog cases. In either context, the rights are based on interference with an owner's property interests in a dog. In summary, based on the balancing test in *Mathews*, every case that has considered the issue of what process is due in the taking of a dog has required a post-deprivation hearing with accompanying due process rights before final governmental action is taken.

One of the first cases to address the issue of due process came in the dangerous dog setting in *Phillips v. San Luis Obispo County Dep't of Animal Regulation*, 183 Cal.App.3d 372 (Cal. App. 2 Dist. 1986). Therein, the court reversed a euthanasia order because the ordinance had no provision providing the owner with notice of a hearing or a hearing itself either before the seizure of the dog or before destruction.

The lack of hearing after a euthanasia order was carried out was the issue in *Van Patten v. City of Binghamton*, 137 F.Supp.2d 98 (N.D.N.Y. 2001). Relying on the three-part test in *Mathews,* the court looked at what process is due in a dangerous dog setting. It began by examining the plaintiff's interest which was affected by the governmental action:

Defendants destroyed his personal property. Although, on the one hand, pets are considered personal property and, as such, are replaceable, the fact of the matter is

> that they are property with personality. No two dogs are the same. Pets are capable of providing invaluable love, friendship, and companionship—things that other types of personal property simply cannot provide. This has led to the familiar adage that "dogs are a man's best friend." In this regard, pets are distinguishable from what we normally consider as personal property. Thus, while we can buy another pet that may fill some of the voids caused by the loss of a pet, there is no such thing as replacement.

*Id.* at 104-05. As to factor two, the court found the erroneous deprivation risk high because the result of the lack of hearing was the euthanasia of the dog. While the court conceded the government's interest in controlling dangerous dogs, it gave little consideration to this factor because the dog was incarcerated at the time of the determination, and boarding the dog was a minimal cost. The court thus held that the lack of the ability to get a hearing after the euthanasia order was entered violated the dog owner's due process rights as a matter of law.

In *State v. Cowan*, 814 N.E.2nd 846 (Ohio 2004), the Supreme Court of the State of Ohio held a statute unconstitutional because it denied a dog owner the right to a hearing to contest the dog warden's unilateral ability to declare a dog dangerous. The Florida Supreme Court in *Pasco v. Riehl*, 635 So. 2d 17 (Fla. 1994), also ruled that a statute establishing a dangerous dog classification was unconstitutional as it failed to provide for a hearing to contest same. *Louisville Kennel Club, Inc. v. Louisville/Jefferson County Metro Gov't*, 2009 WL 3210690 (W.D.Ky. 2009), likewise analyzed due process claim under *Mathews* and noted as follows:

> [T]he government is not permitted to deprive an animal owner of his property without due process of law. The question is not whether process is due, but rather how much is required.

*Id*. at 10. The court went on to enjoin as unconstitutional that portion of the Louisville dangerous dog ordinance that allowed permanent deprivation of a dog without a finding of guilt.

Finally, one of the leading cases regarding due process in the context of the "taking" of a dog is *Mansour v. King County,* 131 Wash.App. 255 (Wash.App. Div. 1 2006). Again the court

used the *Mathews* balancing test and held that the county could not require banishment or euthanasia of a dog without providing a post-deprivation hearing, notice of hearing, an ascertainable standard of proof, and the right to subpoena power.

Clearly, the Nelsons were entitled to the due process protections afforded by the Fourteenth Amendment with regard to the banning of Mazzy from the Town of New Llano. Nevertheless, the Ordinance at issue provides absolutely no due process whatsoever. There is no right to post-deprivation hearing or no way to contest the Town's determination that a dog is a "pit bull" except by pre-paying $200.00 for a DNA test which is not permitted to be used in the context of breed bans. Clearly that does not satisfy the requirements of due process. This is particularly troubling when violation of the ordinance entails a criminal offense since the due process required in the context of a criminal proceeding is "considerably greater" than in a civil proceeding. *Herrada v. City of Detroit*, 275 F.3d 553, 559 (6th Cir. 2001). Accordingly, the Nelsons are entitled to preliminary and permanent injunctive relief to enjoin enforcement of the Ordinance and to allow Mazzy to return home.

> ### b. Requiring the Nelsons to "Pay to Play" Violates Due Process Requirements, and Plaintiffs Have a Substantial Likelihood of Prevailing on the Pay-to-Play Due Process Claim and Can Show Actual Success on Same.

The Ordinance at issue has no due process "trial." Instead, it has a "Disputed Breed" section, which is really the first and only time an owner has to contest the visual identification. Per the Ordinance,

> In the event that the owner of such dog disputes the classification of such dog as a Pit Bull, the Town of New Llano will have a DNA test done to declare the breed. The owner will be responsible for the $200 fee for the testing which will be payable to the Town in advance. If the dogs' (sic) genetic test states that he is **not of any** Pit Bull breed, than (sic) the Town will refund the owner for the fees. If the test

comes back that the dog **is of Pit Bull breed**, than (sic) the owner will have to abide by all the rules of this ordinance.[56]

So, if an owner disputes the visual identification of his dog as a pit bull, he must pre-pay $200.00 to the Town for a DNA test. If the owner cannot afford to pay $200.00, the dog is automatically banned.

In *Downey v. Pierce County*, 267 P.3d 445 (Wash.App. Div. 2 2011), the ordinance in question required the owner to pay a $250.00 fee for the right to contest a dangerous animal declaration ("DAD"). The court held that due process required access to an **initial** evidentiary hearing **without charge**. The court, relying on *Mathews v. Eldridge*, stated as follows:

> [T]he risk of erroneous deprivation of these interests under the current procedures if a pet owner does not or cannot pay the administrative fee for auditor's review is high because, at that point, the pet owner has had no opportunity to be heard, and the DAD has not been subject to any adversarial or evidentiary testing. Moreover, before the government can deprive an individual of a property interest, it is required to afford her "some form of hearing."

> Finally, although the County's interest in protecting the public from dangerous animals is strong, charging an administrative fee to offset the expense of conducting preliminary administrative proceedings and, arguably, control the number of meritless challenges to DADs, must be balanced against the risk that the fee could compromise the requirement that "some form of hearing is *required* before an individual is finally deprived of a property interest." Requiring the responding party to pay a fee to access any review of a government initiated action could prevent many people from obtaining the review they are legally entitled to before deprivation of a property interest.

*Id.* at 451 (citations omitted)(emphasis in original). The same point was made in *Louisville Kennel Club*:

> [I]f such a person was unable to put up $450 immediately upon the probable cause finding, his pet is forfeit (sic) and he has no apparent recourse for its recovery, even if he is ultimately found innocent of the underlying charge. There is thus a high risk of erroneous deprivation, which some sort of additional hearing, appeal, or late-payment process could remedy.

---

[56] Exhibit 1-C (emphasis added).

2009 WL 3210690, *10.

These cases demonstrate the need for an initial adversarial hearing **without a fee**, which Ordinance 4 of 2013 does not provide.  The DNA test represents the first-tier adversarial hearing; therefore, charging $200.00 for same violates due process.  Accordingly, the Nelsons submit that they have shown not only a mere likelihood of success on their due process claim, but also actual success on same.  Thus, they are entitled to preliminary and permanent injunctive relief to enjoin enforcement of the Ordinance.

### c. *Plaintiffs Have a Substantial Likelihood of Prevailing on Their Void for Vagueness Claim and Can Show Actual Success on Same.*

Void for vagueness claims come under the due process clause of the Fourteenth Amendment, which "proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'"  *Women's Medical Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001)(citations omitted).  As explained by the Fifth Circuit, a law is "unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.* (citations omitted).  To succeed on this claim, the Nelsons "must establish that no set of circumstances exists under which the [Ordinance] could be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### i. *The Definition of "Pit Bull" Is Unconstitutionally Vague.*

Void for vagueness claims in the context of pit bull bans are not new.  For example, in *American Dog Owners Ass'n v. City of Lynn*, 533 N.E.2d 642, 644 (Mass. 1989), the Massachusetts Supreme Court held that an ordinance which defined a "pit bull" as an "American

Staffordshire, Staffordshire Pit Bull Terrier, Bull Terrier or any mixture thereof," was unconstitutionally vague.

In the matter at hand, Defendant's Ordinance defines pits bulls in Section I as follows:

a.    The Staffordshire Bull Terrier breed of dogs
b.    The American Staffordshire Terrier breed of dogs
c.    The American Pit Bull Terrier breed of dogs
d.    Dogs that have the appearance and characteristics of being **predominately** of the breeds of dogs known as Staffordshire Bull Terrier, American Pit Bull Terrier, American Staffordshire Terrier.[57]

However, the "Disputed Breed" section of the Ordinance states that if the dog's DNA test shows that it is "**of** Pit Bull breed," the dog is banned.[58]

"Predominately" is also defined as "predominantly,"[59] which is an adverb defined as "for the most part" or "mainly."[60]  On the other hand, "of," which is the key term used in the "disputed breed" section, is defined as "belonging to, relating to, or connected with (someone or something)."[61]  So if the New Llano animal control officer thinks that a dog is "mainly" pit bull, the dog is banned.  But if the DNA test shows merely that the dog belongs to or relates to the "pit bull breed," then it is banned.  These two definitions clearly conflict with each other; therefore, the Ordinance as written fails to provide New Llano dog owners with a reasonable opportunity to know what dogs are banned.

*ii.    Visual Identification by the Animal Control Officer Renders the Ordinance Unconstitutionally Vague.*

Moreover, the Ordinance gives the animal control officer complete discretion when it comes to deciding whether a dog appears to be one of the three banned breeds or is

---

[57] *Id.* (emphasis added).
[58] *Id.* (emphasis added).
[59] http://www.merriam-webster.com/dictionary/predominately?show=0&t=1401052213
[60] http://www.merriam-webster.com/dictionary/predominantly
[61] http://www.merriam-webster.com/dictionary/of

"predominately" one of those breeds. The Ordinance provides absolutely no guidance as to physical characteristics the animal control officer should consider when deciding whether a dog is a pit bull. Instead, as in *State v. Cowan,* 814 N.E.2d 846, the animal control officer is given "unfettered discretion" in visually identifying a dog and labeling it as a pit bull.[62]

Moreover, in *Cardelle v. Miami-Dade County Code Enforcement*, 2010 Fla. Env. Lexis 111, 2010 FALR 175, 17 Fla. L. Weekly Supp 923a (Circ. Ct. 11th JDC 2010),[63] the court ruled that for an animal control officer's opinion of a dog's breed based on visual identification to be admissible, the officer must be qualified as an expert, and his opinion must pass the standard for admissibility of experts' opinions set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). In the matter at hand, the Town has admitted that its **Fire Chief**, Jim Ratcliff, was the person who was sent to visually identify Mazzy and determine whether she should be banned.[64]

Nevertheless, even if the Ordinance did provide guidance to the animal control officer, that would not cure its defects. Dr. Kristopher Irizarry, an Associate Professor in bioinformatics, genetics, and genomics at the College of Veterinary Medicine, Western University of Health Sciences, has opined that visual identification of breeds in mixed breed dogs is inaccurate.[65] This is the result of relatively few regions of the genome being associated with anatomical traits in a dog.[66] He has also stated that the idea that the presence of an anatomical feature, *i.e*., smooth coat, square head, or muscular body, correlates with behavior is not based in science.[67] He further has

---

[62] Further, and as noted in the arguments on due process, a New Llano dog owner has no right to a hearing after the animal control officer makes his decision.
[63] Attached hereto as Exhibit 2.
[64] R. Doc. 7, pp. 6 – 7, ¶ 24.
[65] Exhibit 3, Affidavit of Dr. Kristopher Irizarry, at ¶ 15.
[66] *Id.* at ¶ 16.
[67] *Id.* at ¶ 24.

opined that there is no scientific evidence that the breeds listed in Ordinance 4 of 2013 are more aggressive or dangerous than other dogs.[68]

Accordingly, because the Ordinance at issue gives the animal control officer unfettered discretion to visually identify a dog as one of the three named breeds or as being "predominately" one of those breeds, and because visual identification of mixed breed dogs is inaccurate, then, to quote the Fifth Circuit in *Women's Medical Ctr. of Northwest Houston*, 248 F.3d at 421, Ordinance 4 of 2013 is "so indefinite that it allows arbitrary and discriminatory enforcement."

### iii.  The Town Relies on a DNA Test Which Is Not Permitted to be Used for Breed Ban Ordinances.

As discussed above in the due process section, if a dog owner disputes the animal control officer's visual identification of his dog as a pit bull, he must then pre-pay the Town and let it conduct a DNA test to determine whether the dog is "of" pit bull breed.  Nevertheless, the manufacturer of the test, Mars Veterinary, states in its Terms and Conditions that the Wisdom Panel 2.0 is not to be used to determine whether a dog is banned in a community.[69]  Mars also states on its website that its test is not permitted or authorized to be used to ban a particular breed.[70] Yet the Town is using Mars' DNA test for that exact purpose.  This Court should not allow this to continue.

Finally, the fact that Ordinance 4 of 2013 is criminal in nature is significant.   There is a "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  *Village of Hoffman Estates v. Flipside, Hoffman*

---

[68] *Id.* at ¶ 25.
[69] Exhibit 1-F, Terms and Conditions attached to Affidavit of Christina Nelson.  Note that Mars has recently amended its Terms and Conditions to specify that the test is not "intended to be used in any judicial proceedings." http://www.wisdompanel.com/about_wp/terms_and_conditions/
[70] Exhibit 1 at ¶ 27.

*Estates, Inc.,* 455 U.S. 489, 498-99 (1982). Thus, the Court here should give stricter scrutiny to the vagueness of the Ordinance since jail time is involved as a penalty.

Based on all the above deficiencies in the Ordinance, there is no set of circumstances under which it could be valid. Thus, the Nelsons have a strong likelihood of success on their void for vagueness claim and can show actual success on same.

### d. The Governmental Interest

As in every case involving dogs, either dangerous or banned, the government's purported interest is public safety. Given that, the government should have no interest in seizing, boarding, and destroying dogs who are not dangerous. In the breed ban context, the governmental interest is lessened because the dogs being seized have done nothing actionable in a dangerous dog context, instead, they simply "look" like a pit bull type dog. Consequently, it is questionable whether breed bans serve a rational basis in protecting public safety. *Dias v. City and County of Denver,* 2010 WL 3873004, *7 (D.Colo. 2010). Finally, it is questionable whether the government's interest goes so far as to allow the criminalization of ownership of a dog whose breed(s) the government cannot even accurately identify.

Regardless, all the cases which have considered the governmental interest when there is no due process afforded have concluded that while the government has some interest in protecting the public from dangerous dogs, it still must provide due process to dog owners when interfering with their property rights, and even more so when putting the owners' liberty at risk. *Louisville Kennel Club,* 2009 WL 3210690. It could be argued that in the context of breed bans, there is no reason why a pre-deprivation hearing could not be provided to reduce the high risk of erroneous deprivation. *See Maldondo v. Municipality of Barceloneta*, 682 F.Supp.2d 109 (D.Puerto Rico

22

2010)("Defendants' interests would not have been harmed by providing Plaintiffs with a hearing prior to the deprivation of their pets").

### 3. Favorable Balance of Hardships

The Town's purported concern is public safety from allegedly dangerous dogs; however, this concern is already addressed by the fact that it has Louisiana's dangerous dog laws, La. R.S. 14:102.12, *et seq.*, to enforce against dogs who have actually been shown to be aggressive or dangerous. The Louisiana dangerous dog laws also have incorporated therein the due process requirements that Defendant's breed ban lacks. The Town's interest in enforcing a facially unconstitutional ordinance is clearly outweighed by the wrongful interference with the Nelsons' interests in their companion animal Mazzy, who will continue to be forced to live outside the Town pending this litigation unless this Court intervenes.

### 4. Positive Effect on the Public Interest

Upholding constitutional rights surely serves the public interest. Enjoining the Town from enforcing an unconstitutional Ordinance spares those similarly situated from suffering the same fate as the Nelsons have. It is thus in the public's interest to enjoin enforcement of Ordinance 4 of 2013.

### C. Bond

Federal Rule of Civil Procedure 65(c), while requiring security for the issuance of a preliminary injunction, does not require that the security be substantial. Rather, it only requires that a court require an applicant to give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." F.R.C.P. 65(c).

The Town of New Llano will not be damaged in any way if the injunctive relief requested herein is granted. It will still have the Louisiana dangerous dog laws to enforce against canines that do actual harm, and it will not have to pay any additional cost to **not** enforce the pit bull ban. In fact, the Town will actually save money by not having to buy the DNA test required under the statute.

In *Sak v. The City of Aurelia, Iowa*, 832 F.Supp.2d 1026 (N.D.Iowa 2011), the court entered a preliminary injunction against the City enjoining it from enforcing its pit bull ban against service dogs. Bond was set by the court at $1.00. Given the facts and circumstances herein, Plaintiffs respectfully submit that such a bond would be appropriate in this case.

### D.  Equitable Remedy

District courts have "traditionally had the equitable power to fashion any remedy necessary and appropriate to do justice in a particular case." *Wenner v. Texas Lottery Com'n*, 123 F.3d 321, 325 (5th Cir. 1997). For example, in *U.S. v. State of La.*, 952 F.Supp. 1151 (W.D.La. 1997), the federal government sought to enjoin certain elected judges from receiving their commissions to serve on city court. While the court did issue an injunction, it also allowed the judges to remain in their positions pending the outcome of a declaratory judgment action. *Id.* at 1174. The court stated that its authority for shaping a "workable" injunctive remedy arose from its general equitable powers as well as Louisiana law. *Id.*

In the unlikely event that this Court finds that Plaintiffs have not proven their right to a preliminary and/or permanent injunction, they respectfully request that this Court exercise its equitable powers to fashion a remedy appropriate in this case, and that is that the Court issue an order allowing them to bring Mazzy home pending a final judgment in this matter. Such a remedy would not only benefit the Nelsons, but it would actually also help the Town mitigate its possible

future liability for Mazzy's boarding costs.  Plaintiffs submit that this Court's allowing Mazzy to return home would certainly be a "workable" injunctive remedy that would be appropriate if the Court declines at this time to enjoin the Town from enforcing the Ordinance at issue.

## VI. <u>CONCLUSION</u>

Wherefore, for all the foregoing reasons, Plaintiffs request that this Court issue an order enjoining the Town from enforcing Ordinance 4 of 2013 permanently, or at least preliminarily pending trial on the merits.  The Nelsons submit that they have given this Court multiple reasons to find that the Town of New Llano's Ordinance 4 of 2013 banning pit bull dogs is unconstitutional. They also submit that have shown irreparable injury, a substantial likelihood of success on the merits of their claims, as well as actual success on the merits, a favorable balance of hardships, and that there will be no adverse effect on the public interest if their relief is granted.

Accordingly, Plaintiffs pray that their Motion for Preliminary and/or Permanent Injunctive Relief be granted, and that the Town be enjoined from enforcing Ordinance 4 of 2013. Alternatively, should the Court choose not to grant that relief at this time, Plaintiffs pray that this Court exercise its considerable power to fashion an equitable remedy and allow them to bring Mazzy home pending a final judgment in this litigation.

RESPECTFULLY SUBMITTED:


/s/ Stacy R. Palowsky
**STACY R. PALOWSKY, #25203**
PALOWSKY LAW, LLC
249 Fairfield Oaks Drive
Madisonville, LA 70447
Telephone:  (985) 792-1567
Facsimile:  (985) 590-5230
Email:  spalowsky@palowsky-law.com

-and-

/s/ Fred M. Kray
Fred M. Kray, #238546
Law Offices Of Fred M. Kray
P.O. Box 141293
Gainesville, FL 32614
Telephone:  (352) 337-2721
Facsimile:   (352) 376-2500
Email: fmkray@gmail.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Stacy R. Palowsky
Stacy R. Palowsky, #25203